**WILSON et al. v. SHORES–MUELLER CO. et al.**

No. 41.

District Court, N. D. Iowa, Cedar Rapids Division.

Sept. 13, 1941.

Free & Free, of Sioux City, Iowa (Fred H. Free, of Sioux City, Iowa, of counsel), for plaintiffs.

Don Barnes and T. M. Ingersoll, both of Cedar Rapids, Iowa, for defendants.

730

SCOTT, District Judge.

On August 9, 1941, Lorraine Wilson and two others, common stockholders in the Shores-Mueller Company, an Iowa corporation in 1931 and prior thereto engaged in business at Cedar Rapids, Iowa, in the manufacture of chemicals, began this action in the District Court of the United States for the Northern District of Iowa, against the Shores-Mueller Company, Van Vechten Shaffer, alleged agent of the Cedar Rapids National Bank of Cedar Rapids, Iowa, Don Barnes (named as Donald Barnes) attorney for said Bank, Geo. A. Shores, John H. Mueller and A. G. Kampmeier, directors of the Shores-Mueller Company, Arthur Barlow, former receiver for said Company, Frank Byers, former attorney for said Company, C. C. Kuning, M. J. Bush, H. S. Simkins, Gordon B. Shores, the Merchants National Bank of Cedar Rapids, Iowa, and the Shores Company, a corporation and alleged successor to the Shores-Mueller Company, alleging in substance that some time prior to February 1, 1931, the individual defendants entered into a fraudulent secret plan and conspiracy, the object of which was to take control of the entire assets and property of the Shores-Mueller Company, and convert the same to their own use and transfer and convey the same to a corporation thereafter to be organized by them. That the Shores-Mueller Company had assets, real and personal, exceeding the sum of $608,000, and liabilities aggregating only $75,000. That in pursuance of such conspiracy defendants Shaffer and Barnes by arrangement with Geo. A. Shores, John H. Mueller and A. G. Kampmeier, directors of the Shores-Mueller Company, called a meeting of the board of directors of such Company at which said Shaffer and Barnes represented falsely that the Shores-Mueller Company owed the Cedar Rapids National Bank the sum of $30,000, past due indebtedness, and demanded under threat of a receivership that the directors of said Company immediately turn over the entire property, assets and business of said corporation to said Shaffer and such officers and directors as he might elect in place of the existing directors, promising that within the period of two years all debts of the Shores-Mueller Company would be liquidated and the property returned to said Company. That under such coercion the defendant directors of the Shores-Mueller Company acceded to such demand and surrendered the property and business of the Shores-Mueller Company. That the newly appointed directors conducted the business of said Company for the period of approximately two years, but failed to liquidate its liabilities or return its property, but in collusion with its officers and the individual defendants, Barnes and others, brought an action in a State Court for the appointment of a receiver, and that the defendant, Byers, acting as attorney for the Shores-Mueller Company, voluntarily entered the appearance of said Company, confessed the grounds alleged by the plaintiffs in such action, and consented to the appointment of a receiver. That defendant, Arthur Barlow, was appointed such receiver, and shortly thereafter said Barlow as such receiver at a receiver's sale, sold all of the assets of said Company then of the alleged value of more than $500,000, to the defendant, Van Vechten Shaffer, president of the Cedar Rapids National Bank, for the sum of $7,000, and the assumption of $36,000, of bonded indebtedness. That thereupon said Shaffer and his associates organized a new corporation named the Shores Company, and transferred all of such assets to said new Company, thus depriving the Shores-Mueller Company and its stockholders of the entire property and business of said corporation. It is further alleged that the frauds of the defendants did not come to the knowledge of the plaintiffs until some time during the year of 1935, the exact date not being alleged.

It is further alleged that this action is brought in the right of said Shores-Mueller Company by plaintiffs as stockholders thereof, and also for themselves as individual stockholders if it be found that the charter of the corporation has been forfeited or cancelled. It is further alleged that plaintiffs have made no demands upon the officers and directors of the Shores-Mueller Company to act in the premises for that the said officers and directors were co-conspirators and that such demands would be futile. Diversity of citizenship between the plaintiffs and defendants is alleged, and it is further alleged that the amount or sum in controversy exceeds the sum of $3,000, exclusive of interest and costs.

Plaintiffs pray that if the Court finds that the Shores-Mueller Company has any status as a corporation, that defendants account to it for its assets fraudulently and unlawfully converted, and that the Shores-Mueller Company recover from the other

defendants the amounts found due, and that the Shores Company be required to convey and deliver to the Shores-Mueller Company the real estate, plant, equipment and other assets received by it from the receiver of the Shores-Mueller Company and the defendant, Van Vechten Shaffer, and account for all rents, issues and profits while in the unlawful possession of the property of the Shores-Mueller Company; and in the event it be found that the Shores-Mueller Company has no longer any existence as a corporation, that the plaintiffs and all other stockholders of the Shores-Mueller Company have an accounting and judgment and decree in such amount as will equal the value of the real estate, assets, good will, and for general equitable relief.

The defendants, Van Vechten Shaffer, Arthur Barlow, Gordon B. Shores, Frank Byers, the Merchants National Bank of Cedar Rapids, Iowa, and the Shores Company, appear and move the Court to dismiss the action because the complaint shows by its allegations that the claims of the plaintiffs are barred by the Statutes of Limitations of Iowa, and more particularly Paragraph 5 of § 11007 of the 1939 Code of Iowa, which provides:

"Actions may be brought within the times herein limited, respectively, after their causes accrue, and not afterwards, except when otherwise specially declared:

\*    \*    \*    \*    \*

"5. Unwritten contracts—injuries to property—fraud—other actions. Those founded on unwritten contracts, those brought for injuries to property, or for relief on the ground of fraud in cases heretofore solely cognizable in a court of chancery, and all other actions not otherwise provided for in this respect, within five years."

The motion also sets up the ground that the action is barred by reason of laches in failing to bring the action within the period as aforesaid. Numerous other grounds are set up in the motion which will not be further noticed at this point.

Voluminous briefs have been filed on both sides, and the motion was argued at length orally. Briefs for the appearing defendants and oral arguments were at the outset directed to the proposition that the defense of the statute of limitations can be raised by motion where the bar appears upon the face of the complaint, notwithstanding that under Rule 8(c) of the Rules

of Civil Procedure for the District Courts of the United States, 28 U.S.C.A. following section 723c, the plea of statute of limitations is made an affirmative defense, and is not enumerated in Rule 12(b) among those defenses which may be interposed by motion.

In support of this contention the defendants cite the case of Leimer v. State Mutual Life Assurance Company, 108 F.2d 302, 305, decided by the Circuit Court of Appeals for the Eighth Circuit. The brief quotes that case as follows:

"A demurrer or a motion to dismiss for want of equity admitted, for the purposes of the demurrer or motion, all facts well pleaded in the complaint. Under the present practice, we think, the making of a motion to dismiss a complaint for failure to state a claim upon which relief can be granted has the effect of admitting the existence and validity of the claim as stated, but challenges the right of the plaintiff to relief thereunder. Such a motion, of course, serves a useful purpose where, for instance, a complaint states a claim based upon a wrong for which there is clearly no remedy, or a claim which the plaintiff is without right or power to assert and for which no relief could possibly be granted to him, or a claim which the averments of the complaint show conclusively to be barred by limitations."

■■ Inasmuch as it does conclusively appear from the complaint here under consideration that more than five years elapsed between the time of plaintiffs' discovery of the alleged fraud and the beginning of this action, I assume that I am bound by the decision of the Circuit Court of Appeals in the case just cited and quoted from, and that the question here under consideration may be presented by motion, assuming that this Court is to be controlled by the statute of limitations rather than by the doctrine of laches. If the doctrine of laches is to be applied, more than a mere matter of lapse of time is to be considered, and I would rule that the defense of laches must be presented in a case of this kind by answer.

From what has been said I conclude that I am first forced to a decision as to whether this is a case in which a court of equity is bound by a State statute of limitations, or whether it is a case to be considered under the equitable doctrine of laches. Defendants' counsel in the brief somewhat confuse the question by their contention that both the statute of limitations and the

doctrine of laches are in the last analysis practically identical. In this connection they again urge the holding of the Circuit Court of Appeals, and cite and quote from the case of Redd v. Brun, 8 Cir., 157 F. 190, 192, and say: "There a claim was held to be barred by laches." Counsel then quote from the cited case as follows:

"The national courts, sitting in equity, are not bound by the statutes of limitations of the states, but they apply the doctrine of laches in analogy to them. If a suit discloses no extraordinary facts or circumstances, they apply the bar of laches at the expiration of the time prescribed by the statute of the state for the limitation of an action at law of like character, but if unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution of a suit after a briefer, or to forbid its maintenance after a longer, period than that fixed by the statute, the chancellor will not be bound by the statute, but will determine the extraordinary case in accordance with the equities which condition it. Kelley v. Boettcher [8 Cir.] 85 F. 55, 62, 29 C.C.A. 14, 21. If the complainant invokes the exercise of the judicial discretion of the court to permit the maintenance of his suit after the analogous statutory time has expired, the burden is upon him to show that he has been guilty of no laches. He must specifically plead and prove what the impediments were to the earlier prosecution of his claim, if he was ignorant of the facts alleged in the bill, how he came to be so long without knowledge of them, the means, if any, by which the defendant concealed them, how and when he first came to know them, and such other facts and circumstances as would appeal to the conscience of a chancellor. 'And especially must there be distinct averments of the time when the fraud, mistake, and concealment, or misrepresentation was discovered, and how discovered, and what the discovery is, so that the court may clearly see whether, by the exercise of ordinary diligence, the discovery might have been before made. For, if by such diligence the discovery might have been before made, the bill has no foundation on which it can stand in equity, on account of the laches.' "

■ In judging the applicability of Redd v. Brun, supra, and considering the language of the late Judge Sanborn, one must consider the character of the case he had under consideration. An examination of the opinion in Redd v. Brun, supra, discloses that the case was one to subject certain real estate to the payment of a judgment at law theretofore rendered. It thus appears that the court of equity in that case was exercising its jurisdiction in aid of a legal right, but one in which only an equitable remedy could give relief. The jurisdiction, therefore, being exercised was the exclusive jurisdiction of equity. The three-year Colorado statute referred to by Judge Sanborn was a general statute. It covered "actions on contract not otherwise covered; for relief on ground of actual or constructive fraud." The statute of Colorado was not one specifically extending the bar to actions for relief on the ground of fraud in suits solely cognizable in courts of chancery. In other words, it was not a suit directly made applicable to courts of equity exercising their exclusive equitable jurisdiction. As applied to the case then under consideration, the language of Judge Sanborn quoted was correct. But generally applied, the first sentence quoted: "The national courts, sitting in equity, are not bound by the statutes of limitations of the states, but they apply the doctrine of laches in analogy to them," is too broad, because national courts, sitting in equity and exercising their concurrent jurisdiction, are bound by the statutes of limitations of the states. They are also bound by the statutes of limitations of the states particularly directed to specific cases falling within the exclusive equity jurisdiction. Russell v. Todd, 309 U.S. 280, 60 S.Ct. 527, 84 L.Ed. 754.

■ Courts of equity have exclusive jurisdiction under two sets of circumstances. First, where the rights, interests or estates are purely equitable. Second, where the rights, interests or estates may be legal, but only equitable remedies are capable of granting relief. Pomeroy's Equity Jurisprudence, 3rd Ed., §§ 137 and 138.

What then is the character of jurisdiction to be exercised by the court of equity in the instant case? Many if not all of the rights and interests here described are legal. However, the remaining interest in the real estate disposed of and conveyed here is probably equitable. But the relief prayed, and the only relief available in the circumstances, is entirely beyond the reach of the arm of a court of law. Only the discerning eye of equity can search out, and only the supple hand of equity can retrieve the subject which is alleged to

have been spirited away. Contracts must be set aside, decrees must be annulled, conveyances must be declared void, and thereafter an accounting of the corporate affairs had, and after the discharge of all liabilities of the corporation, Shores-Mueller Company, the residue, if any remains, must be apportioned among its rightful shareholders. Courts of law can accomplish none of these acts. Therefore, this case falls within the exclusive equity jurisdiction of the court.

We now meet the question, Is there any statute in the State of Iowa which binds a court of equity in the exercise of its exclusive equity jurisdiction? The language of § 11007, subd. 5 of the Code of Iowa, 1939 (and the same statute has existed for many decades before 1939) in applying the five-year limitation is as follows: "Those founded on unwritten contracts, those brought for injuries to property, or for relief on the ground of fraud in cases heretofore solely cognizable in a court of chancery, and all other actions not otherwise provided for in this respect, within five years."

██ Now, it will be observed that this statute does not include all cases solely cognizable in a court of chancery, but only those brought for relief on the ground of fraud. It will be further observed that this statute does not include all actions brought for relief on the ground of fraud, but only such as are solely cognizable in a court of chancery. In other words, this is a specific state statute extending its bar to a particular class of actions which falls within the exclusive jurisdiction of equity. Thus it would appear that the case falls strictly within the rule laid down by the United States Supreme Court in Russell v. Todd, supra. Compare also West v. American T. & T. Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139, 132 A.L.R. 956.

I shall not burden this opinion with selections from the legion of Iowa cases decided under this statute of limitations, but refer only to Chapter 487, § 11007 et seq., Annotations of the Code of Iowa, where the cases are assembled and where it is repeatedly held that "the statute of limitations applies equally to actions at law and suits in equity". Supra Chapter, III, 17.

Since the submission of the motion herein discussed, a motion by another defendant to suppress service has been filed, but inasmuch as the service and matter referred to in such motion will abate with the rul-ing on the motion submitted and the dismissal of the complaint, no further attention will be given to that motion nor to other grounds of the motion submitted.

██ From what I have said, I am of opinion that it conclusively appears on the face of the complaint that the action is barred by the Iowa Statute of Limitations urged in the motion, and that under the authorities cited this Court as a court of equity is bound thereby, and that the complaint must be dismissed, and it will be so ordered.