BARNHART et al. v. WESTERN MARYLAND RY. CO.

No. 1234.

District Court, D. Maryland.

Nov. 19, 1941.

Isaac Lobe Straus, of Baltimore, Md., for plaintiffs.

Walter C. Capper, of Cumberland, Md., and Eugene Williams, of Baltimore, Md., for defendant.

CHESNUT, District Judge.

The complaint in the above case is filed by seven individuals "constituting the committee representing and acting for the Federation of Shop Craft Employes, Maintenance of Way Employes and Signal Man Employes of the Western Maryland Railway" on behalf of themselves and about 1,200 other alleged employes of the Railway Company. The complaint takes the formal outline of a bill in equity asking for an injunction and accounting and a determination of the plaintiffs' status; but in simplified substance the suit seeks to recover wages which the plaintiffs have been prevented from earning by reason of their alleged unlawful and wrongful discharge by the Railway Company in 1922. The de-

fendant has filed a motion to dismiss the complaint because (1) the court lacks jurisdiction of the subject matter; (2) the complaint fails to state a valid cause of action; and (3) because the action, if any, has long been barred by limitations and laches.

The origin and history of the plaintiffs' grievances are recited in the lengthy complaint of 17 pages, which in that respect does not seem to be in compliance with the requirement of rule 8(a) of the new Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which provides that the pleading shall contain a short and plain statement of the grounds upon which the court's jurisdiction depends and a short and plain statement of the claim showing that the pleader is entitled to relief. It is developed in the complaint that during the war of 1917, the management of the railroads was taken over by the Government and they were returned to private ownership on March 1, 1920. Immediately prior thereto Congress passed the Transportation Act of 1920, approved February 28th. Chapter 7 of the Act, 45 U.S.C.A. §§ 131–146, created the Railroad Labor Board for the purpose of promoting amicable adjustments of disputes between the railroads and their employes with regard to the rate of wages and working conditions of employes, and authorized the Board in certain contingencies to make and publish decisions as to what would constitute, in the opinion of the Board, just and reasonable rates and conditions. On July 20, 1920, the Board decided a dispute as to wages and on April 14, 1921, it published its decision No. 119 dealing with the subject of rules regulating working conditions. In the latter decision the Board determined that the working conditions and agreements in force under the authority of the United States Railroad Administration should cease and terminate July 1, 1921; and for the immediate future the Board called upon the officers of the railroads and their employes to designate and authorize representatives to confer on and decide disputes relating to working conditions so far as possible, consistent with some general principles then set forth by the Board. On November 29, 1921, the Board rendered a supplemental decision whereby it promulgated a new set of rules for working conditions. The complaint alleges that the Railway accepted the ruling and printed it and put it into effect, and the complaint further alleges that the said rules constituted contracts and agreements be-

tween the Western Maryland Railway and its employes and that said contracts and agreements were known and described as "Negotiations of rules and working conditions under decision 119 of the ˙United States Railway Labor Board". The contracts themselves are not set out at length or annexed to the complaint which stated that copies thereof were in possession of the defendant company which would be called upon to produce them at the hearing of the cause. The complaint, however, does include the wording of two of said rules, Nos. 37 and 183. Rule 37 provided that employes should not be dismissed without a fair hearing and trial; and rule 183 provided that the rules should remain in effect until superseded or amended after thirty days notice of changes proposed and conferences thereon held.

The complaint then alleges that on March 16, 1922, the Western Maryland Railway Company summarily, arbitrarily and illegally discharged and dismissed .the plaintiffs and other employes without compliance with said rules Nos. 37 and 183; and that the circumstances of said discharge were that the Railway Company entered into contracts with the Dixon Construction and Repair Company and other contractors for the operation of its railway shops and posted notices that "all positions in the Maintenance of Ways of Mechanical Department of Western Maryland Railway Company and its leased and operating lines below the position of mechanical engineer and master car builder (with their personal office force) are abolished. The work heretofore assigned to the positions abolished will thereafter be performed by Dixon Construction and Repair Company;". And on the same day (March 11, 1922) the Dixon Construction and Repair Company posted a notice that employes of the Western Maryland Railway Company in the maintenance of equipment of mechanical department in the positions abolished March 16, 1922, who wished employment of a similar nature on or after March 16, 1922, might apply to the contractor. Thereafter on March 23, 1922, a committee of the employes notified the new contractor that unless the wage scale formerly maintained by the Railway Company was continued, the employes would discontinue work or in other words, go on strike, which in fact thereafter became effective on March 25, 1922. The Labor Board was notified of this latter dispute, and on November 13, 1922, it published its decision No. 1361 to the effect that con-

tracts by the Railroad· with the Dixon Construction and Repair Company and other contractors were in violation of the Transportation Act of 1920 insofar as they purported or were construed by the carrier to remove the employes from the application of the Act, and that the contracts affecting the wages and working rules of said employes (of the contractors) were in violation of various decisions of the Labor Board; that the shop employes of the contractor continued to be under the jurisdiction of the Labor Board and subject to the application of the Transportation Act of 1920 and the decisions of the Labor Board; and the carriers were directed to take up with the employes the matter of reinstatement of any interested employes or their representatives.

The complaint does not state specifically which, if any, of the plaintiffs did apply to the Railway for reinstatement, but does allege in more general terms that the plaintiffs were then and always have been ready and willing to perform their duties of employment for the Railway Company in accordance with the alleged contracts and agreements and have so tendered themselves to the defendant and have unsuccessfully invited conferences thereupon.

The complaint further alleges that the defendant refused to accept the decision of the Labor Board as valid and effective, and on December 21, 1922, the President of the Railway wrote the Labor Board denying its jurisdiction and authority to render the decision and requested the Board to join the Railway in obtaining the decision of a court as to the status of the contracts and the Board's decisions; but that no such proceeding was taken or prosecuted and the defendant Railway continued to refuse to recognize, accept or apply the Labor Board's decision and continued to carry out its contracts with the independent contractors and continued to treat the employes as no longer employes of the Railway Company; but that on February 1, 1934, the Coordinator of Railroads of the United States ordered the contracts between the Railway Company and the alleged independent contractors abolished as illegal, and accordingly the Railway Company abrogated them; and thereupon it originated and maintained a company union of its employes, and by intimidation and coercion forced such of its employes as it could into the said company union and out of the regular union of said employes which was independent of said company's domination. The complaint

further alleges that in 1934 and 1935 the plaintiffs or their representatives appealed to the Railroad Adjustment Board at Chicago (which had succeeded the National Labor Board) and to the National Mediation Board at Washington, D. C., but that both last-named Boards disclaimed any jurisdiction in the matter.

*As to the jurisdiction of the court.* After hearing counsel and a study of the applicable statutes and judicial decisions, I reach the conclusion that the motion to dismiss must be granted. The jurisdiction of this court to entertain the suit and decide upon the merits of the controversy, if it exists at all, is to be found only in 28 U.S. C.A. § 41(1), which statute gives this court jurisdiction of controversies "where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and (a) arises under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority". The complaint alleges the existence of a sufficient amount in controversy, but the question involved is whether the controversy "arises" under a law of the United States, it being quite clear that no provision of the Constitution or treaty is involved; and there being no contention that the suit can be entertained by reason of diverse citizenship which apparently does not exist.

It was decided by the Supreme Court in two fully considered cases that the powers conferred upon the Railroad Labor Board were in effect advisory only, and that its decisions were not made compulsory but had only the sanction and force of publicity and public opinion. Pennsylvania R. Co. v. United States Railroad Labor Board, 261 U.S. 72, 43 S.Ct. 278, 67 L.Ed. 536; Pennsylvania R. System & Allied Lines Federation No. 90 v. Pennsylvania R. Co., 267 U.S. 203, 45 S.Ct. 307, 69 L.Ed. 574. In the first of these cases the Pennsylvania Railroad had filed a suit attacking the jurisdictional authority of the Labor Board under the Act creating it, and to enjoin its activity and official publications with respect to certain labor disputes then existing. The Supreme Court affirmed a dismissal of the suit but said (261 U.S. at page 84, 43 S.Ct. at page 283, 67 L.Ed. 536): "But title 3 was not enacted to provide a tribunal to determine what were the legal rights and obligations of railway employers and employees or to enforce or protect them. Courts can do that. The Labor Board was created to decide how the parties ought to

exercise their legal rights so as to enable them to cooperate in running the railroad. It was to reach a fair compromise between the parties without regard to the legal rights upon which each side might insist in a court of law. * * * The jurisdiction of the Board to direct the parties to do what it deems they should do is not to be limited by their constitutional or legal right to refuse to do it. Under the act there is no constraint upon them to do what the Board decides they should do except the moral constraint, already mentioned, of publication of its decision."

And on page 79 of 261 U.S., on page 281 of 43 S.Ct., 67 L.Ed. 536, Chief Justice Taft, speaking for the Court, said: "The decisions of the Labor Board are not to be enforced by process. The only sanction of its decision is to be the force of public opinion invoked by the fairness of a full hearing, the intrinsic justice of the conclusion, strengthened by the official prestige of the Board, and the full publication of the violation of such decision by any party to the proceeding. * * * The function of the Labor Board is to direct that public criticism against the party who, it thinks, justly deserves it."

The second case was a continuation of the controversy adjudicated in the first, in a different form. In the latter case the Labor Union of the Pennsylvania Railroad Company filed the bill against the Railroad to enjoin it from carrying out an alleged conspiracy to defeat the provisions of the Railroad Labor Board legislation, and also claiming damages by loss of wages. In the latter aspect this second case somewhat resembles the instant case. The Supreme Court again approved the dismissal of this second suit and reiterated·its former opinion as to the function and powers of the Labor Board, finding no conspiracy on the part of the Railroad and its officers to violate the Act by its alleged refusal to observe the Labor Board's decision. With respect to the claim for damages as incidental to an injunction, the court declined to consider the merits of the claim. What the plaintiffs were seeking in this respect was a recovery of the difference between the old wage scale prevailing during government management and the new wage scale established by the company after the return of the railroad to private ownership and management. The Chief Justice said (267 U.S. at page 218, 45 S.Ct. at page 312, 69 L.Ed. 574): "Even if the Federation No. 90 and its members as representatives in a

class suit in equity could recover such claims as damages incidental to granting the main equitable relief prayed for, the denial of the prayer for the equitable relief and the dismissal of the main part of the bill carries with it such incidental claims *without prejudice to their prosecution at law by individual claimants* as they may be advised. Our conclusions on the merits of the main issue and the damage claims have made it unnecessary for us to consider objections made to the representative capacity of the complainants to maintain the bill." (Italics supplied.)

The Railroad Labor Board as created by the Act of 1920 was legislated out of office by the Railway Labor Act of May 20, 1926, which, among other things, created the National Mediation Board. See 45 U.S.C.A. §§ 151–163, constituting the Railway Labor Act.

■■ As previously indicated the substance of the present complaint is a suit for wages which the plaintiffs claim they were deprived of earning by reason of an unlawful discharge in 1922. A claim of this nature is, of course, ordinarily the basis only of a suit at common law for a sum of money, and in my opinion the complaint, although cast in the form of a bill in equity, should be treated as a common-law suit. The prayers of the complaint are that the court shall determine that the defendant's actions in dismissing its employes in 1922 was wrongful, and that the defendant be enjoined from continuing its attitude toward its employes, and that the case may be referred to a master for an accounting of damages. It is true also that paragraph 8 of the complaint refers to the alleged loss by the plaintiffs or some of them of "privileges, emoluments, benefits or advantages including old age and retirement pensions, sick and disability relief and benefits, insurance benefits for and on account of which they periodically make payments into the relief, pension and insurance departments of said defendant Railway Company." There is, however, no definite averment with respect to such alleged incidental damages, the right to recover for which is clearly incidental to and dependent upon the jurisdiction of this court to determine that there was, as alleged, an unlawful discharge of the plaintiffs by the defendant in 1922; and if there is no such proper jurisdiction of the court, then the alleged incidental damages do not of themselves justify the determination of the merits of the case by this court; as was the holding to like effect in the Supreme Court case just above referred to.

■■ In my opinion the instant case cannot be said to "arise" under the Act of Congress creating the Railroad Labor Board (repealed more than 15 years ago) which is the only law of the United States referred to as the basis for jurisdiction in this case. We may assume, as is alleged in the bill, and as held by the Labor Board, that the dismissal of the plaintiffs as employes in the circumstances stated, was a subterfuge by the defendant and an evasion of the spirit and desirable policy announced by Congress in the creation of the Labor Board; but as determined by the Supreme Court, the decisions of the Board were not binding on the defendant and of themselves did not constitute any adjudication of its obligations. The Act had no compulsory features with respect to the decisions of the Board, and in that respect was entirely unlike the much more recent legislation creating the National Labor Relations Board, and the well-known National Fair Labor Standards Act known as the Wages and Hours Law. Particularly it is to be noted that the Act now in question did not of itself undertake to define what should be the minimum or fair wage scale nor rules for working conditions of railway employes. On the contrary it left these matters for negotiation between the railroads and their employes, and merely sought to promote harmony and cooperation by publicity and force of public opinion to the extent created by the publication of decisions of the Labor Board as to what in its opinion constituted just and reasonable wages and conditions. There is nothing in the Act of Congress which created the Railroad Labor Board on which to base a right of action in a federal court by employes for damages sustained by a wrongful discharge.

■ Federal court jurisdiction to determine the merits of a controversy is not created merely because the controversy has its origin or background in the existence of a federal law. In Shulthis v. McDougal, 225 U.S. 561, 569, 32 S.Ct. 704, 706, 56 L. Ed. 1205, the Supreme Court stated the general principles to determine whether a case arose under a law of the United States for jurisdictional purposes and said, among other things, that, "A suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those

laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction, or effect of such a law, upon the determination of which the result depends."

The same subject was re-examined and the same principle again emphasized by the Supreme Court in the opinion by Mr. Justice Cardozo in Gully v. First National Bank, 299 U.S. 109, page 112, 57 S.Ct. 96, at page 97, 81 L.Ed. 70, where it was said: "How and when a case arises 'under the Constitution or laws of the United States' has been much considered in the books. Some tests are well established. To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. Starin v. New York, 115 U.S. 248, 257, 6 S.Ct. 28, 29 L.Ed. 388; First National Bank v. Williams, 252 U.S. 504, 512, 40 S. Ct. 372, 374, 64 L.Ed. 690. The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. Ib; King County v. Seattle School District, 263 U.S. 361, 363, 364, 44 S.Ct. 127, 128, 68 L.Ed. 339. * * * Looking backward we can see that the early cases were less exacting than the recent ones in respect of some of these conditions."

And on page 114 of 299 U.S., 57 S.Ct. 96, 81 L.Ed. 70, the opinion contains the quotation made just above from Shulthis v. McDougal. See, also, Puerto Rico v. Russell & Co., 288 U.S. 476, 483, 53 S.Ct. 447, 77 L.Ed. 903; Gay v. Ruff, 292 U.S. 25, 35, 54 S.Ct. 608, 78 L.Ed. 1099, 92 A.L.R. 970; Marshall v. Desert Properties Co., 9 Cir., 103 F.2d 551. In Shulthis v. McDougal, supra, 225 U.S. at page 569, 32 S.Ct. at page 706, 56 L.Ed. 1205, it was also said: "It is not enough that grounds of jurisdiction other than diverse citizenship may be inferred argumentatively from the statements in the bill, for jurisdiction cannot rest on any ground that is not affirmatively and distinctly set forth."

The present complaint does not distinctly and specifically state the basis of the claimed jurisdiction; but it does sufficiently appear therefrom that it must be based if at all only on the Act of Congress creating the Railroad Labor Board; and clearly it cannot be said that the instant case "involves a dispute or controversy respecting the validity, construction or effect" of that stat-ute, upon the determination of which the result depends. The present complaint does not call upon the court to now determine either the validity, construction or effect of any provision of the Act creating the Railroad Labor Board. Such questions have been heretofore determined by the Supreme Court, and it is not my understanding from the argument of counsel for the plaintiffs that there is any effort in this case to distinguish or avoid the effect of those decisions. What is here involved is merely a controversy between the parties over an alleged wrongful discharge of the plaintiffs from employment existing after the passage of an Act of Congress, and possibly affected as to some of its working conditions by the published decisions of the Labor Board; but the right of action asserted does not arise from any provision of the statute, and the determination of the controversy does not depend upon any disputed validity, construction or effect of the statute. In other words, the employment may have been inspired by the Act, but a right of action for the defendant's alleged breach of the contract does not arise from the Act; but only from the subsequent contractual relations of the parties. The wrongful breach of such relations does not confer federal court jurisdiction unless there is diverse citizenship.

The determination that the court lacks jurisdiction in this case makes unnecessary any discussion of the other grounds advanced in support of the motion to dismiss; but, in the event of an appeal, it may be useful for this court to state its views with regard to these other questions.

*Was there an enforceable contract?* The defendant contends that the complaint as a whole fails to show an enforceable contract, although there is a general allegation that the so-called rules or working conditions, and particularly the two above referred to, did constitute a contract. It will be noted that the complaint does not undertake to set out the contract or to do other than allege its legal effect, but calls upon the defendant for its production, and I understand from counsel that the contract, if it exists, was composed of the posting by the defendants of about 200 rules as to working conditions which the complaint alleges were promulgated by the Labor Board and accepted or assented to by the defendant and acted on by the plaintiffs in working thereunder. Counsel for the defendant nevertheless contends that all this does not

constitute any enforceable contract because it was at best only unilateral and was lacking in mutuality and also in legal consideration in that the plaintiffs as employes did not sign any written agreement nor otherwise obligate themselves to serve the defendant for any definite length of time or beyond their day to day employment. And counsel for the defendant call my attention to an adjudication to that effect by the Circuit Court for Baltimore County (a Maryland state court) in the case of Daniel C. Wenner v. Western Maryland Railway Company, reported in the Baltimore Daily Record for May 15, 1926. It is said that some time prior thereto (and presumably within the period of limitations—three years from the alleged wrongful discharge) more than 100 individual employes brought separate suits against the Western Maryland Railway Company in a state court in Cumberland, Maryland, for damages or unpaid wages by reason of their wrongful discharge by the Railway Company in 1922. The Wenner case was one of these, and it is further said it was treated as a test case and removed for actual trial from Alleghany County, Maryland (where Cumberland is situated) to Baltimore County for trial. In Baltimore County, the defendant first demurred to each of the several counts of the declaration with the result that the court, then consisting of Judge T. Scott Offutt, Chief Judge of that Circuit (and as such a member of the Court of Appeals of Maryland) and Judge Frank I. Duncan, Associate Judge, sustained the demurrer to two of the ten counts, and overruled it as to the others. The court filed an extended written opinion giving its reasons for the rulings on the demurrer, copy of which has been handed to me and which I find discusses quite fully some of the legal propositions relating to the nature and effect of the contract in question, as stated in the several counts of the declaration.

Later the case came on for trial before Judges Offutt and Preston, and, after the conclusion of the testimony for the plaintiff, the court directed the jury to find a verdict for the defendant on the ground that there was no legally enforceable contract, because the contract was unilateral and without a valid consideration in that the plaintiff had not obligated himself to any particular period of service. It appears that no appeal was taken in the case to the Court of Appeals of Maryland. The result of this case is not advanced by the defendant here as *res adjudicata,* but as a very persuasive authority in support of its contention that there was no legally enforceable contract. See to the same effect Davis v. Davis, Director General of Railroads, 1926, 197 Ind. 386, 151 N.E. 134; Wilson v. Airline Coal Co., 1933, 215 Iowa 855, 246 N.W. 753; Swartz v. Houston, Oct. 11, 1941, 154 Kan. 182, 117 P.2d 576. If in the present case this court had jurisdiction to adjudicate the controversy, and the jurisdiction was based on diverse citizenship, it seems fairly clear that under recent decisions of the Supreme Court of the United States in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; West v. American Tel. & Tel. Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139, 132 A.L.R. 956, and Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., June 2, 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, it would be my duty to give effect to the decision of the Baltimore County Court as strong and persuasive evidence of what would be the decision of the Maryland Court of Appeals in such a case. In view of the well-established principles of contract law illustrated by these authorities it seems difficult to find an enforceable contract in this case despite the general allegation of the complaint to that effect. But assuming that the averment of the bill in that respect should prevail, it also appears that the suit is barred by limitations or laches.

■ *Limitations and laches.* The cause of action in this case, if any, arose in March 1922 when the plaintiffs were wrongfully discharged. This suit was not instituted until June 27, 1941, more than nineteen years later. The applicable period of limitations by the Maryland statute for a suit of this character is three years, Md. Code of 1939, Art. 57, § 1. It is my understanding of the new Federal Rules of Civil Procedure that ordinarily the defense of limitations must be interposed by an answer, unless the legal effect of the bar of limitations conclusively appears from the complaint. See rules 8(c) and 12(b) (6) and 9(f), 28 U.S.C.A. following section 723c; Moore Fed.Prac. p. 597; Wilson v. Shores-Mueller Co., D.C., 40 F.Supp. 729; Leimer v. State Mut. Life Assur. Co., 8 Cir., 108 F.2d 302, 306; McMullen v. Lewis, 4 Cir., 32 F.2d 481; Compare Dirk Ter Haar v. Seaboard Oil Co., D.C., 1 F.R.D. 598. It is clear here from the complaint that the cause of action arose more than nineteen years ago, and there is nothing in the complaint to show any bar to the application of the

statute. If the complaint is to be treated, as I think it should be, as in the nature of a common-law suit for wages and damages for a wrongful discharge, the Maryland statute of limitations is applicable under the Federal Rules of Decision Act, 28 U.S.C.A. § 725. Guaranty Trust Co. v. United States, 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224. Even if the complaint should be treated as one in equity the same result would follow in this particular case. Wilhelm v. Caylor, 32 Md. 151; Jones v. Burgess, 176 Md. 270, 4 A.2d 473; Russell v. Todd, 309 U.S. 280, 288, 289, 60 S.Ct. 527, 84 L.Ed. 754. It therefore follows that even if there originally was an enforceable contract it has now long been barred by limitations or laches.

The complaint submits the contention that the plaintiffs have exhausted all their legal remedies by applying for relief from time to time to the Railroad Labor Board and its successor the National Mediation Board, and other federal departments or agencies which have successively declined jurisdiction. But this seems to be no legal excuse for failure of the plaintiffs to invoke the jurisdiction of this court if it properly existed many years ago. And indeed it appears, as already noted, that the plaintiffs or some of their class did unsuccessfully invoke the admitted jurisdiction of a Maryland state court more than sixteen years ago.

For these reasons I am forced to the conclusion that the plaintiffs' bill must be dismissed with taxable court costs allowed to the defendant in accordance with the usual custom.