STARIN & Another *v.* NEW YORK.

INDEPENDENT STEAMBOAT COMPANY *v.* NEW YORK.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

Submitted April 22, 1885.—Decided November 2, 1885.

When it appears in a suit that some title, right, privilege or immunity on which recovery depends, will be defeated by one construction of the Constitution or laws of the United States, or sustained by the opposite construction, the case is one arising under the Constitution or laws of the United States, within the meaning of that term as used in the act of March 3, 1875, 18 Stat. 470.

The questions whether the City of New York has the exclusive right to establish ferries between Manhattan Island and the north shore of Staten Island on the Kill von Kull; and, whether in a given case this right has been interfered with by the setting up of a ferry without license, are not questions arising under the Constitution or laws of the United States.

A separate defence by one defendant, in a joint suit against him and others upon a joint or a joint and several cause of action, does not create a separate controversy, so as to entitle that defendant, if the necessary citizenship exists as to him, to a removal of the cause under the second clause of § 2, act of March 3, 1875.

*Louisville & Nashville Railroad Co.* v. *Ide,* 114 U. S. 52; *Putnam* v. *Ingraham,* 114 U. S. 57; and *Pirie* v. *Tvedt,* 115 U. S. 41; affirmed.

These were appeals from orders of the Circuit Court remanding a suit which had been removed from a State court under the act of March 3, 1875, ch. 137, 18 Stat. 470. The questions to be decided arose on the following facts:

The Mayor, Aldermen and Commonalty of the City of New York, a municipal corporation of the State of New York, commonly called the City of New York, brought a suit in equity on or about the 11th of August, 1884, in the Superior Court of the City of New York, against John H. Starin, Independent Steamboat Company, Starin's City, River and Harbor Transportation Company of New York, New York and Staten Island Steamboat Company, David Manning, Franklin Wilson, William Clark, John G. Belknap, James B. Corwin, Max Golden, Sam-

uel Underhill, and Frank Smith, to restrain them from using and employing the steam ferry-boats Pomona, D. R. Martin, Laura M. Starin, and Castleton, or any other vessel or vessels of any kind, for and in the transportation of persons, animals, vehicles freight, goods, and chattels from or to Pier No. 18, North River, or from or to any place in Manhattan Island to or from certain landing places on the shore of Staten Island, without the license or permission of the plaintiffs; and also for an account of moneys received by the defendants, or any or either of them, for such transportation. Both Manhattan Island and Staten Island are in the State of New York. The cause of action as stated in the complaint was, that the city, under its charter, granted originally January 15, 1730, by the Province of New York, and since confirmed by the State of New York, has the exclusive right of establishing ferries from Manhattan Island to the opposite shores, in such and so many places as the common council may think fit; that the defendants, without the permission of the city, had set up and were maintaining a ferry between Manhattan Island and certain landing places on Staten Island, and for that purpose employed the boats above named; that the defendant Starin was the owner of the Castleton and the D. R. Martin, and the person chiefly interested in Starin's City, River and Harbor Transportation Company of New York, which owns the Laura M. Starin, and in the New York and Staten Island Steamboat Company, which owns the Pomona; that while the business was done in the name of the Independent Steamboat Company, that company was organized and incorporated through his instrumentality and in his interest, and was composed of but three persons, all of whom were in his employ and under his control; that the incorporation of the company was a device for his own personal benefit; and that he was in fact the person actually operating the ferry. The certificate of incorporation, a copy of which was attached to the complaint, showed that the company was organized under the laws of New Jersey, July 26, 1884, with a capital of $5,000, divided into five hundred shares of $10 each, all owned by three persons, for the transportation of persons and property upon water as common

carriers for hire; that the principal part of the business of the company in New Jersey was to be transacted in Jersey City; and that the business out of that State was to be done in the cities of New York and Brooklyn and the several villages, landing places, cities and towns on the Hudson River, Staten Island, and Long Island, in New York, accessible by water.

The defendants Starin, Independent Steamboat Company, Starin's City, River and Harbor Transportation Company, and New York and Staten Island Steamboat Company each filed a separate answer to the complaint. All the other defendants, who were the masters or pilots or engineers employed in running the several boats, united in one answer. The answers all contained substantially the same defences. They admitted the ownership of the boats as set forth in the complaint, except that it was alleged the Castleton belonged to the New York and Staten Island Steamboat Company instead of Starin. They admitted the charter of the city, with words purporting to grant certain rights as to the establishment of ferries from Manhattan Island to the opposite shores, but denied that this grant extended to ferries between New York and that part of Staten Island which borders upon the Kill von Kull. They admitted that the several boats mentioned in the complaint were run at stated times by the Independent Steamboat Company, under the management of the masters and engineers, without the license or permission of the city, for the transportation of persons and property between Pier 18, North River, which is on Manhattan Island, and certain landing places on the shore of Staten Island, making daily fourteen trips, or thereabouts, but they denied that, in so doing, the company either operated a ferry or usurped any franchise belonging to the city. They also denied the allegations in the complaint as to the connection of the defendant Starin with the Independent Steamboat Company, and denied that Starin was the person who was actually operating the boats.

The answers then alleged, " as a matter of special defence under the laws of the United States "—

1. That the Independent Steamboat Company was a corporation, organized and incorporated under the laws of New

Jersey, for the purpose of transporting persons and property by water, as a common carrier for hire, in and over the waters of the Hudson River, Kill von Kull, Raritan Bay, and their tributaries, between places on such waters in New York and New Jersey, including Staten Island and Long Island, and the cities of New York and Brooklyn; that the company chartered the boats in question from the several owners thereof, and leased wharves and landing places in New York and on the shore of Staten Island bordering on the Kill von Kull, for the purpose of engaging in the business of transportation by water between such wharves and landings.

2. That all the boats in question were enrolled and licensed, under the laws of the United States for carrying on the coasting trade, as vessels of the United States, and that the individual defendants described as masters or engineers on the boats are all licensed under the laws of the United States to act as masters or pilots, or as engineers, on steam vessels upon the waters traversed by the boats in question.

3. That for a number of years terminating in 1874 steamboats, similar to those operated by the company, and doing a transportation business similar to that in which the company is engaged, had been, without any license or permission from the city, navigated from Pier 18, New York, to the landing places on Staten Island made use of by the company, and back; that large sums were realized therefrom, and that since 1874 this business has greatly increased.

4. That the waters of the Hudson River or bay of New York, and the Kill von Kull, are waters of the United States, and public and common highways of interstate and international commerce; that the steamboats as operated by the company do not constitute a ferry within the meaning of the laws of the United States, or of the State of New York, or of the city charter, but that the city seeks, under the cover of its charter and by this suit, to establish in itself, as and for a monopoly and as private property, the ownership of all rights to carry on commercial intercourse, consisting in the daily or regular interchange or transportation of passengers and property between Manhattan and Staten Islands, over such waters,

and to obstruct the navigation of such waters, although carried on by citizens of the United States in steam-vessels duly enrolled and licensed under the laws of the United States, and navigated by masters, pilots and engineers duly licensed under the laws of the United States, thus practically nullifying the laws of the United States regulating commerce and navigation.

After the answers were filed two petitions were presented for a removal of the suit to the Circuit Court, one by all the defendants, on the ground that the suit was one arising under the Constitution and laws of the United States, and the other, by the Independent Steamboat Company alone, on the ground that there was in the suit a controversy wholly between that company and the city as to whether the company " had or had not the right to use and operate its steamboats" in the way contended for, and that this controversy could be fully determined as between them.

A copy of the record in the State court having been filed in the Circuit Court of the United States, that court remanded the cause, and thereupon these appeals were taken, one by all the defendants, and the other by the Independent Steamboat Company alone. The two appeals were docketed in this court separately.

*Mr. Roscoe Conkling, Mr. James McNamee, Mr. A. L. Pincoffs*, and *Mr. Charles McNamee* for appellants.—On behalf of Starin and Others appellants the counsel argued in their brief as follows: I. The rule governing jurisdiction is undoubtedly the same, whether the Constitution or a law of the United States is involved in the case. As to that rule, it has been already held by this court, " If a part of a case turns on Federal law, the Circuit Court has jurisdiction." *Osborn* v. *Bank of United States*, 9 Wheat. 738. "Cases arising under the laws of the United States are such as grow out of the legislation of Congress, whether they constitute the right, or privilege, or claim, or protection, or defence of the party in whole or in part by whom they are asserted." *Railroad Co.* v. *Mississippi*, 102 U. S. 135. "Cases arising under the laws of the United States within the meaning of the Removal Act are

such as grow out of the legislation of Congress whether they constitute the right, claim, protection, or defence in whole or in part of the party by whom they are asserted. If a Federal law is to any extent an ingredient of the controversy by way of claim or defence, the condition exists upon which the right of removal depends, and the right is not impaired because other questions are involved which are not of a Federal character." *Western Union Telegraph Co.* v. *National Telegraph Co.,* 19 Fed. Rep. 561.

The removal is claimed in this case because the provisions of the Constitution and Federal laws are ingredients of the defence. If the question arises whether the privileges of a ferry franchise granted by the city of New York came into collision with the rights secured by the coasting license granted by the United States, such a question is a Federal one, whatever this court may think of the merits of the question. See *Railway Co.* v. *Renwick,* 102 U. S. 180, and *Illinois* v. *Chicago, Burlington & Quincy Railway Co.,* 16 Fed. Rep. 706. An examination of the complaint will show that this action is not brought to enjoin these defendants from simply running a ferry in opposition to the one ferry actually established. There certainly is a controversy, presented by the bill, as to the right of the plaintiffs, in virtue of a private property right, to absolutely prohibit these defendants from running any ferry from any point on New York Island to any point on Staten Island.

We claim that the question as to the respective rights of the holders of a coasting license and the grantee of a ferry right such as is claimed by the city of New York has never been determined either by the decision in *Conway* v. *Taylor,* 1 Black, 603, or in any of the cases collected in *Cardwell* v. *Bridge Co.,* 113 U. S. 205, 207. On its face a coasting license does not contain any restriction ; it authorizes the running of the boat as many times as is thought proper, and on the general ground that any express authorization to do certain acts includes the authorization of the acts necessary to carry the power into effect, it authorizes the holder to land his passengers and freight. Each limitation of these rights has to be

justified by a superior right. If this superior right is claimed by an individual in virtue of a grant by the State, and the right of the State to grant that right is contested, this presents a question, and as the court have always held, it is a Federal question. All the different cases, involving the existence or non-existence of such a superior right on the part of the State have been decided by this court on the basis that they involve Federal questions.

II. In the case at bar, the appellees, after alleging that they have certain ferry rights, claim that these rights entitle them to prevent regular transportation between the whole extent of the shores of the islands of New York and Staten Island. This claim, we reiterate, is not inadvertently made; it is a claim which the city has of late years on several occasions sought to enforce; the proceedings in the case of *The Mayor* v. *Clegg*, (not reported), which we append to this brief, show that the city considers itself entitled to an injunction against the owner of a boat which runs five times a day, from New York to Coney Island, touching at Staten Island. Whether the right now claimed exists in the city or not is the question raised in the pleadings. Now, one of the main defences brought forward in the case at bar is that the claims of the plaintiffs, as shown in their complaint, to exclusive property rights respecting commercial intercourse between New York and Staten Island, in virtue of what it calls its ferry rights, and their threats and actual interference purporting to be authorized by such claims, all of which are now before this court in this proceeding, have actually abridged and materially obstructed such commercial intercourse, causing great loss to this defendant in its business and "inconvenience and delay to great numbers of citizens residing and doing business in New Jersey and other States." The point, in brief, is that the plaintiffs have broadly claimed the right to prevent all regular transportation between New York and Staten Island, although carried on over links in interstate commerce; to this we interpose a defence that such a claim, if established, would be an obstruction to interstate commerce, which must be "free and untrammelled," according to the construction given by this court of the Constitution and

laws as they now exist. This defence is entitled to a hearing in the United States' courts, as it stands, on the Constitution and laws of the United States. It was recently held that Congress had power to regulate navigation, even if it is concerned exclusively with the domestic commerce of the State. *United States* v. *Burlington and Henderson County Ferry Co.*, 21 Fed. Rep. 331, 339. It would naturally follow that in such a case the Federal courts would enjoin and refuse to enforce any State regulation or grant which would amount to an impediment of the freedom of such navigation.

On behalf of the Independent Steamboat Company, counsel made the following points :

I. The complaint, if construed most favorably to the plaintiffs, charges the defendants with combining to run a ferry between New York and Staten Island, and that they have together run such a ferry, thus infringing on exclusive ferry rights of the plaintiffs. Taking this view of the complaint, for the sake of the argument, we claim that such a state of facts does not change the nature of the action as it affects each defendant, or compel a decision that there is but one controversy in the suit and that such sole controversy affects all the defendants jointly and only jointly. The action, being in tort, is in its nature several, notwithstanding allegations charging combination. *Skinner* v. *Gunton,* 1 Wms. Saund. 230 ; *Hutchins* v. *Hutchins,* 7 Hill, 104 ; *Jones* v. *Baker,* 7 Cowen, 445 ; *Boyd* v. *Gill,* 19 Fed. Rep. 145 ; *Wood* v. *Davis,* 18 How. 468 ; *Carneal* v. *Banks,* 10 Wheat. 181, 187 ; *Cameron* v. *McRoberts,* 3 Wheat. 591 ; *Smith* v. *Rines,* 2 Sumner, 338 ; *Case of the Sewing Machine Companies,* 18 Wall. 553, 579 ; *Yulee* v. *Vose,* 99 U. S. 539, 545 ; *Barney* v. *Latham,* 103 U. S. 205 ; *Tvedt* v. *Carson,* 13 Fed. Rep. 353 ; *Fraser* v. *Jennison,* 106 U. S. 191 ; *Ayres* v. *Wiswall,* 112 U. S. 187 ; *Kerling* v. *Cotzhauzen,* 16 Fed. Rep. 705 ; *People* v. *Illinois Central Railroad Co.,* 16 Fed. Rep. 881 ; *Langdon* v. *Fogg,* 21 Blatchford, 392 ; *Hyde* v. *Ruble,* 104 U. S. 407.

II. Assuming here, for the sake of argument, that the position taken by us in the preceding point is incorrect, and that,

where the plaintiffs allege that all the parties whom they have made defendant have been guilty of the same wrongful act, the right of removal is taken away if one of the parties defendant is of the same State as the plaintiffs, we now claim that, under the allegations of this complaint, the case is removable, as presenting a controversy wholly with the defendant Independent Steamboat Company.

In the first place, the prayer of the bill for the taking of an account of the sums of money that have been received by any or either of the defendants, and that they be adjudged to pay over the same to the plaintiffs, shows that the plaintiffs do not consider all of the defendants liable to the same extent or for the same acts, and that they are pursuing them severally. This makes the case removable under the doctrine laid down on page 149 in *Boyd* v. *Gill*, above cited.

But if this were not so, still, as to the engineers and masters who have been made parties to this suit, we need hardly urge that the fact of their being citizens of the same State as the plaintiff can in no way take away the right of removal from this defendant. The record clearly shows that they are simply servants and employees of the Independent Steamboat Company, and so nominal or formal parties here. That they were simply nominal parties was admitted in the argument below.

In a suit to enjoin action by a railroad corporation, the president and directors were made parties and their citizenship was interposed as a bar to removal. The court held them to be not necessary or substantial parties in considering the question of removal, but merely nominal parties whose joinder could not prevent removal. *Pond* v. *Sibley*, 7 Fed. Rep. 129. For a similar decision where the treasurer and directors of a corporation were made parties, see *Hatch* v. *Chicago, Rock Island & Pacific Railroad Co.*, 6 Blatchford, 105, 114.

*Mr. W. W. McFarland* for appellees.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court. After stating the facts in the language reported above, he continued :

We will first consider whether the suit is one which arises under the Constitution or laws of the United States; for, if it is not, the order to remand was right, so far as the removal upon the application of all the defendants is concerned.

The character of a case is determined by the questions involved. *Osborn* v. *Bank of United States*, 9 Wheat. 737, 824. If from the questions it appears that some title, right, privilege, or immunity, on which the recovery depends, will be defeated by one construction of the Constitution or a law of the United States, or sustained by the opposite construction, the case will be one arising under the Constitution or laws of the United States, within the meaning of that term as used in the act of 1875; otherwise not. Such is the effect of the decisions on this subject. *Cohens* v. *Virginia*, 6 Wheat. 264, 379; *Osborn* v. *Bank of United States*, 9 Wheat. 737, 824; *The Mayor* v. *Cooper*, 6 Wall. 247, 252; *Gold Washing & Water Co.* v. *Keyes*, 96 U. S. 199, 201; *Tennessee* v. *Davis*, 100 U. S. 257, 264; *Railroad Co.* v. *Mississippi*, 102 U. S. 135, 140; *Ames* v. *Kansas*, 111 U. S. 449, 462; *Kansas Pacific* v. *Atchison Railroad*, 112 U. S. 414, 416; *Provident Savings Co.* v. *Ford*, 114 U. S. 635, 641; *Pacific Railroad Removal Cases*, 115 U.S. 1, 11.

The questions in this case, as shown by the pleadings, are, 1, whether the city of New York has, under its charter, the exclusive right to establish ferries between Manhattan Island and the shore of Staten Island on the Kill von Kull; and, if it has, then, 2, whether the defendants have, in law and in fact, interfered with that right by setting up and operating such a ferry. The determination of these questions depends, 1, on the construction of the grant in the charter of the city; and, 2, on the character of the business in which the defendants are engaged. It is not contended that there is anything either in the Constitution or the laws of the United States which takes away the right from the city, if it was in fact granted by the original charter before the Revolution; or which defines what a ferry is or shall be, or provides that enrolled and licensed steamboats, managed by licensed officers, may be run on the public waters as ferry-boats, without regard to grants that may have been made by competent authority of exclusive ferry

privileges : and that is not the defence set up in the answers in this case. The question here is as to the extent of the ancient grant made to the city, not as to the rights of the defendants in the navigation of the waters of the United States irrespective of this grant.

It is not pretended that the United States have in any manner attempted to interfere with the power of a State to grant exclusive ferry privileges across public waters between places within its own jurisdiction. No attempt is made by the city to control the use of- the licensed and enrolled vessels of the defendants or their licensed officers, in any other way than by preventing them from running as a ferry between the points named. They may run as they please, and engage in any business that may be desirable, not inconsistent with the exclusive ferry rights of the city. The claim of the city is based entirely on its charter, and it seeks in its complaint to control only that part of the navigation of the public waters in question which is connected with the establishment and operation of ferries between New York and the specified landing places on Staten Island. Although the prayer for judgment when taken by itself may appear to go further, it must be construed in connection with the cause of action as stated in the complaint, and limited accordingly. The defence is that the defendants are not operating a ferry within the meaning of the charter, or, if they are, that it is not such a ferry as comes within the monopoly of the city. If they are not operating such a ferry, or if they are, and it appears that the monopoly granted to the city does not include ferries between New York and Staten Island on the Kill von Kull, they must prevail in the final determination of the suit. The decision of these questions does not depend on the Constitution or laws of the United States. There is nothing in the Constitution or laws of the United States entering into the determination of the cause which, if construed one way will defeat the defendants, or in another sustain them.

It remains to consider the removal on the application of the Independent Steamboat Company alone. The suit is against all the defendants jointly, on the allegation that, acting in common, they are all engaged in violating the rights of the

city by keeping up and maintaining the ferry in question. The averment in the complaint is that the defendant Starin is in reality the person actually operating the ferry, and that he uses the other defendants as his instruments for that purpose. It is conceded that the Independent Steamboat Company does not own the boats running on the route. They all belong to Starin or to companies in which he is the person chiefly interested. The Independent Company was not organized until a few days before this suit was begun. It has a capital of only $5,000, and while it claims to have chartered the boats in question from their respective owners and to be engaged in running them on the route, it does not deny that the other defendants are directly interested in the establishment and maintenance of the ferry, if it be one, which is being operated by and in the name of the company. The only controversy in the case, as stated in the complaint, is as to the right of the defendants to keep up and maintain a ferry on the route in question. Upon one side of that controversy is the plaintiff, and upon the other all the defendants. There cannot be a full determination of this one controversy unless all the defendants are parties. The case as stated in the complaint makes Starin the principal defendant, and the Independent Company only an instrument of his. The object is to prevent him, as well as the others, from using these boats or any others they may own or control in the way these are being used. There is, according to the complaint, but a single cause of action, and that is, the violation of the exclusive ferry rights of the plaintiff by the united efforts of all the defendants. The case is, therefore, within the rule established in *Louisville & Nashville Railroad Co.* v. *Ide*, 114 U. S. 52; *Putnam* v. *Ingraham*, 114 U. S. 57; *Pirie* v. *Tvedt*, 115 U. S. 41, that a separate defence by one defendant in a joint suit against him and others upon a joint or a joint and several cause of action, does not create a separate controversy so as to entitle that defendant, if the necessary citizenship exists as to him, to a removal of the cause under the second clause of § 2 in the act of 1875.

It follows that the case was properly remanded, and the orders of the Circuit Court to that effect are *Affirmed.*