## BARNHART et al. v. WESTERN MARYLAND RY. CO.

### No. 4918.

Circuit Court of Appeals, Fourth Circuit.

June 11, 1942.

710

Isaac Lobe Straus, of Baltimore, Md., for appellants.

Walter C. Capper, of Cumberland, Md., and Eugene S. Williams, of Baltimore, Md., for appellee.

Before PARKER and DOBIE, Circuit Judges, and PAUL, District Judge.

DOBIE, Circuit Judge.

This is an appeal from a final judgment of the District Court of the United States for the District of Maryland, dismissing plaintiff-appellants' complaint. Judge Chesnut granted defendant-appellee's motion to dismiss the complaint on the following grounds: (1) the District Court lacked jurisdiction of the subject matter, (2) the complaint failed to state a valid claim or cause of action, and (3) the action, if any, had long been barred by limitations and laches.

■ The action was instituted by seven individuals who constituted a "committee representing and acting for the Federation of Shop Craft Employees, Maintenance of Way Employees, and Signal Man Employees of the Western Maryland Railway", on behalf of themselves and approximately 1,200 other alleged employees of the Railway Company. The complaint is in the nature of a bill in equity asking for an injunction, an accounting, and a determination of appellants' status or relationship. The origin and history of appellants' grievances are narrated in the prolix complaint which exceeds 17 pages in length. In this respect, the bill is contrary to both the spirit and the express requirement of Rule 8(a) of the new Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which provides that the pleading shall contain a short and plain statement of the grounds upon which the court's jurisdiction depends and a short and plain statement of the claim showing that the pleader is entitled to relief. For purposes of brevity, therefore, we adopt as fair and complete, the concise, but fully ample and accurate, analysis of the complaint as summarized by Judge Chesnut in the opinion below (41 F.Supp. 898, 899):

"It is developed in the complaint that during the war of 1917, the management of the railroads was taken over by the Government and they were returned to private ownership on March 1, 1920. Immediately prior thereto Congress passed the Transportation Act of 1920 approved February 28th. Chapter 7 of the Act, 45 U.S.C.A. §§ 131–146, created the Railroad Labor Board for the purpose of promoting amicable adjustments of disputes between the railroads and their employes with regard to the rate of wages and working conditions of employes, and authorized the Board in certain contingencies to make and publish decisions as to what would constitute, in the opinion of the Board, just and reasonable rates and conditions. On July 20, 1920, the Board decided a dispute as to wages and on April 14, 1921, it published its decision No. 119

dealing with the subject of rules regulating working conditions. In the latter decision the Board determined that the working conditions and agreements in force under the authority of the United States Railroad Administration should cease and terminate July 1, 1921; and for the immediate future the Board called upon the officers of the railroads and their employes to designate and authorize representatives to confer on and decide disputes relating to working conditions so far as possible, consistent with some general principles then set forth by the Board. On November 29, 1921, the Board rendered a supplemental decision whereby it promulgated a new set of rules for working conditions. The complaint alleges that the Railway accepted the ruling and printed it and put it into effect, and the complaint further alleges that the said rules constituted contracts and agreements between the Western Maryland Railway and its employes and that said contracts and agreements were known and described as 'Negotiations of rules and working conditions under decision 119 of the United States Railway Labor Board'. The contracts themselves are not set out at length or annexed to the complaint which stated that copies thereof were in possession of the defendant company which would be called upon to produce them at the hearing of the cause. The complaint, however, does include the wording of two of said rules, Nos. 37 and 183. Rule 37 provided that employes should not be dismissed without a fair hearing and trial; and Rule 183 provided that the rules should remain in effect until superseded or amended after thirty days notice of changes proposed and conferences thereon held.

"The complaint then alleges that on March 16, 1922, the Western Maryland Railway Company summarily, arbitrarily and illegally discharged and dismissed the plaintiffs and other employes without compliance with said Rules Nos. 37 and 183; and that the circumstances of said discharge were that the Railway Company entered into contracts with the Dixon Construction and Repair Company and other contractors for the operation of its railway shops and posted notices that 'all positions in the Maintenance of Ways of Mechanical Department of Western Maryland Railway Company and its leased and operating lines below the position of mechanical engineer and master car builder (with their personal office force) are

abolished. The work heretofore assigned to the positions abolished will thereafter be performed by Dixon Construction and Repair Company'. And on the same day (March 11, 1922) the Dixon Construction and Repair Company posted a notice that employes of the Western Maryland Railway Company in the maintenance of equipment of mechanical department in the positions abolished March 16, 1922, who wished employment of a similar nature on or after March 16, 1922, might apply to the contractor. Thereafter on March 23, 1922, a committee of the employes notified the new contractor that unless the wage scale formerly maintained by the Railway Company was continued, the employes would discontinue work or in other words, go on strike, which in fact thereafter became effective on March 25, 1922. The Labor Board was notified of this latter dispute, and on November 13, 1922, it published its decision No. 1361 to the effect that contracts by the railroad with the Dixon Construction and Repair Company and other contractors were in violation of the Transportation Act of 1920 insofar as they purported or were construed by the carrier to remove the employes from the application of the Act, and that the contracts affecting the wages and working rules of said employes (of the contractors) were in violation of various decisions of the Labor Board; that the shop employes of the contractor continued to be under the jurisdiction of the Labor Board and subject to the application of the Transportation Act of 1920 and the decisions of the Labor Board; and the carriers were directed to take up with the employes the matter of reinstatement of any interested employes or their representatives.

"The complaint does not state specifically which, if any, of the plaintiffs did apply to the Railway for reinstatement, but does allege in more general terms that the plaintiffs were then and always have been ready and willing to perform their duties of employment for the Railway Company in accordance with the alleged contracts and agreements and have so tendered themselves to the defendants and have unsuccessfully invited conferences thereupon.

"The complaint further alleges that the defendant refused to accept the decision of the Labor Board as valid and effective, and on December 21, 1922, the President of the Railway wrote the Labor Board denying its jurisdiction and authority to render the

decision and requested the Board to join the Railway in obtaining the decision of a court as to the status of the contracts and the Board's decisions; but that no such proceeding was taken or prosecuted and the defendant Railway continued to refuse to recognize, accept or apply the Labor Board's decision and continued to carry out its contracts with the independent contractors and continued to treat the employes as no longer employes of the Railway Company; but that on February 1, 1934, the Coordinator of Railroads of the United States ordered the contracts between the Railway Company and the alleged independent contractors abolished as illegal, and accordingly the Railway Company abrogated them; and thereupon it originated and maintained a company union of its employes, and by intimidation and coercion forced such of its employes as it could into the said company union and out of the regular union of said employes which was independent of said company's domination. The complaint further alleges that in 1934 and 1935 the plaintiffs or their representatives appealed to the Railroad Adjustment Board at Chicago (which had succeeded the National Labor Board) and to the National Mediation Board at Washington, D.C., but that both last-named Boards disclaimed any jurisdiction in the matter."

We now proceed to discuss each of the grounds assigned by the court below in granting appellee's motion to dismiss the complaint.

Jurisdiction of the District Court.

█ There is literally nothing in appellants' complaint to indicate that the federal courts have jurisdiction over this controversy, apart from the fact that no jurisdictional allegation is made. Since the question of jurisdiction must be determined from the face of the complaint, Carolina & N. W. Ry. Co. v. Town of Lincolnton, 4 Cir., 33 F.2d 719, we have carefully examined the statements presented in that pleading. No claim to diversity of citizenship is there made, and the only possible ground for jurisdiction is whether there are in the complaint sufficient allegations to disclose that the controversy is one arising under the laws of the United States, inasmuch as the complaint fails to allege that any provision of either the federal constitution or a federal treaty is involved.

The United States District Courts are given jurisdiction of actions: "Where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and (a) arises under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority." 28 U.S.C.A. § 41(1).

There is no dispute over the requisite amount in controversy and the simple question here presented for our consideration is whether the controversy "arises" under a law of the United States, namely, the Act of Congress creating the Railroad Labor Board. 45 U.S.C.A. §§ 131–146 (the Transportation Act of 1920). This Board, as created by the Act of 1920, was legislated out of existence by the Railway Labor Act of May 20, 1926, which, among other things, created the National Mediation Board. 45 U.S.C.A. §§ 151–164. New legislation has since been enacted controlling the subject, but this legislation was passed long subsequent to the time when the alleged rights of appellants sued on herein accrued.

█ The Supreme Court has held that the powers conferred on the Railroad Labor Board pursuant to the Transportation Act of 1920 were advisory only, with no coercive effect whatsoever other than the sanction and force of publicity and public opinion. Pennsylvania R. R. System v. United States Railroad Labor Board, 261 U.S. 72, 43 S.Ct. 278, 67 L.Ed. 536. In other words, a railroad company could not be *compelled* by law to comply with a judgment of the Railroad Labor Board since the Transportation Act was designed to provide a tribunal to determine, but not to enforce, the legal rights and obligations of railway employees and employers. Pennsylvania R. R. System et al. v. Pennsylvania R. Co., 267 U.S. 203, 45 S.Ct. 307, 69 L.Ed. 574.

█ This still-born statute, therefore, differed radically from recent remedial labor legislation such as the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., and the Fair Labor Standards Act, 29 U.S. C.A. § 201 et seq., where the enactments themselves specifically contain compulsory provisions respecting the enforcement of the decisions of the administrative agencies therein established. Thus, there is nothing in the Act creating the Railroad Labor Board on which one could base a cause of action in a federal court by employees for damages sustained by a wrongful dis-

charge. Accordingly, even if we assume, as is alleged in the complaint, and as was held by the Railroad Labor Board, that the discharge of appellants by appellee was a subtle subterfuge and unconscionable evasion of the co-operative spirit announced by Congress in the creation of the Board, the decision of the Board was not binding on the appellee and did not constitute an enforceable adjudication of its obligations.

This brings us to the pivotal point of appellants' case which was succinctly stated by the court below: " * * * clearly it cannot be said that the instant case 'involves a dispute or controversy respecting the validity, construction or effect' of that statute [Transportation Act of 1920], upon the determination of which the result depends. The present complaint does not call upon the court to now determine either the validity, construction or effect of any provision of the Act creating the Railroad Labor Board. Such questions have been heretofore determined by the Supreme Court, and it is not my understanding from the argument of counsel for the plaintiffs that there is any effort in this case to distinguish or avoid the effect of those decisions. What is here involved is merely a controversy between the parties over an alleged wrongful discharge of the plaintiffs from employment existing after the passage of an Act of Congress, and possibly affected as to some of its working conditions by the published decisions of the Labor Board; but the right of action asserted does not arise from any provision of the statute, and the determination of the controversy does not depend upon any disputed validity, construction or effect of the statute. In other words, the employment may have been inspired by the Act, but a right of action for the defendant's alleged breach of the contract does not arise from the Act; but only from the subsequent contractual relations of the parties. The wrongful breach of such relations does not confer federal court jurisdiction unless there is diverse citizenship."

■ This position is buttressed by a number of well considered opinions by the Supreme Court concerning the applicable principles established in order to determine whether a case arises under a law of the United States for jurisdictional purposes. The general rule is as follows:

"A suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction or effect of such a law, upon the determination of which the result depends." Shulthis v. McDougal, 225 U.S. 561, 569, 32 S.Ct. 704, 706, 56 L.Ed. 1205.

The same doctrine was re-examined and re-affirmed by the Supreme Court in Gully v. First National Bank, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70, where Justice Cardozo said:

"How and when a case arises 'under the Constitution or laws of the United States' has been much considered in the books. Some tests are well established. To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. Starin v. New York, 115 U.S. 248, 257, 6 S.Ct. 28, 29 L.Ed. 388; First National Bank v. Williams, 252 U.S. 504, 512, 40 S.Ct. 372, 374, 64 L.Ed. 690. The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. Id.; King County v. Seattle School District, 263 U.S. 361, 363, 364, 44 S.Ct. 127, 128, 68 L.Ed. 339. * * * Looking backward we can see that the early cases were less exacting than the recent ones in respect of some of these conditions."

See, also, Starin v. New York, 115 U.S. 248, 257, 6 S.Ct. 28, 29 L.Ed. 388; First National Bank v. Williams, 252 U.S. 504, 512, 40 S.Ct. 372, 374, 64 L.Ed. 690; People of Puerto Rico v. Russell & Co., 288 U.S. 476, 483, 53 S.Ct. 447, 77 L.Ed. 903; Gay v. Ruff, 292 U.S. 25, 35, 54 S.Ct. 608, 78 L.Ed. 1099, 92 A.L.R. 970; Marshall v. Desert Properties Co., 9 Cir., 103 F.2d 551.

■ It is unnecessary for us at this time to review and distinguish these and the many other relevant cases inasmuch as the commentators on federal procedure have already carefully collated and reduced to appropriate categories all the case law in this field. See Hughes on Federal Practice, § 19, 605 et seq., Moore's Federal Practice, 178 et seq., Dobie on Federal Procedure, § 60 et seq. Accordingly, we feel it ample in the present case to state

our conclusion that appellants' controversy, at best, has merely its background in the existence of a federal law, but this origin alone is insufficient to invoke the jurisdiction of the federal courts. This is in line with the rule:

"It is not enough that grounds of jurisdiction other than diverse citizenship may be inferred argumentatively from the statements in the bill, for jurisdiction cannot rest on any ground that is not affirmatively and distinctly set forth." Shulthis v. McDougal, 225 U.S. 561, 569, 32 S.Ct. 704, 706, 56 L.Ed. 1205.

See, also, the interesting cases, in which the jurisdiction of the District Court was denied, of Doidge v. Cunard S. S. Co., 1 Cir., 1927, 19 F.2d 500; Thompson v. Standard Oil Co. of New Jersey, 4 Cir., 1933, 67 F.2d 644.

A determination of the alleged rights of the appellants, here, involves, we think, no interpretation of either a federal statute or the terms of a decision of the Board. The Board acted under the Statute, it is true, and the rules were promulgated by the Board; but these rules, so promulgated, had no binding legal effect unless, and until, they were accepted and embodied in a working agreement between the employer and the employee. These alleged rights, then, so incorporated in the agreement, thus became a matter of contract between the parties, and any rights of the appellants, in this connection, arose, not out of the statute that set up the Board, not out of the action of the Board in promulgating the rules, but out of the contract itself. If these observations be true, it is clear that the instant case did not arise under any statute of the United States so as to confer jurisdiction, on this basis, upon the United States District Court.

Thus, it has been repeatedly held that actions involving the interpretation of *contracts concerning federal patents* are not actions arising under the laws of the United States. Wade v. Lawder, 165 U.S. 624, 17 S.Ct. 425, 41 L.Ed. 851; Henry v. A. B. Dick Co., 224 U.S. 1, 32 S.Ct. 364, 56 L.Ed. 645, Ann.Cas.1913D, 880; Odell v. F. C. Farnsworth Co., 250 U.S. 501, 39 S.Ct. 516, 63 L.Ed. 1111. This is equally true of *contracts in connection with copyrights.* Silver v. Holt, C.C., 84 F. 809; Danks v. Gordon, 2 Cir., 272 F. 821. And it should be noted that the allegation of the complaint, in the instant case, was that

the discharge of the appellants was in violation of "said contracts and agreements."

Quite in point here is the very recent case of Teague v. Brotherhood of Locomotive Firemen and Enginemen, 6 Cir., 127 F.2d 53, decided April 9, 1942. That was an action by a railway fireman against the Brotherhood (which was designated as collective bargaining agent of his class under the Railway Labor Act) and the railroad, to set aside a collective bargaining agreement on the ground that this agreement was destructive of his vested rights of seniority preference. In the unanimous opinion of the Court, holding that the action did not arise under a federal law, Circuit Judge Simons, 127 F.2d 53, 56, said:

"Reverting to the appellant's own statement of his case, such rights as are here claimed arise from the individual contracts of the negro firemen with the defendant Railroad. The appellant is unable to point to provision of the Railway Labor Act which protects such rights, or permits their invasion. The provisions of § 2, subd. eighth make the terms of the collective bargaining agreement a part of the contract of employment between the carrier and each employee—the case, nevertheless, remains one based upon a contract between private parties cognizable, if at all, under state law."

### Limitations and Laches.

The claim or cause of action in this case, if any exists, arose in March, 1922, when appellants allegedly were wrongfully discharged. This action was instituted in June, 1941, more than 19 years thereafter. The court below treated the complaint as one in the nature of a common law suit for wages and damages resulting from a wrongful discharge. Accordingly, the appropriate Maryland Statute of Limitations, prescribing a period of three years, was applied, and the action was held barred by the statute. We do not take quite so narrow a view of appellants' complaint, for we feel it was truly one in equity seeking, among other things, an injunction, an accounting, and a determination of appellants' status or relationship, with a complexus of all the rights and privileges thereunto appertaining—such as wages, seniority, relief and pension. But even this generous interpretation is not enough to breathe life into appellants' atrophied complaint, for we think that the doctrine

of laches clearly precludes an institution of the action at this late date.

"But, instead of its being a legal demand and the subject of an action of account at law, suppose the appellant's right to an account to be only equitable, and for which no other remedy exists but a bill in chancery, is he in any better position in reference to the defence of the Statute of Limitations? Clearly not. In such case, the statute applies strictly by analogy, and bars equally as if the demand was purely legal. The bill in equity is an analogous proceeding to an action of account, and there is no reason why one proceeding should be barred and not the other. They are both equally within the reason and policy of the statute." Wilhelm v. Caylor, 32 Md. 151, 157.

█ See, also, Seeley v. Dunlop, 157 Md. 378, 384, 146 A. 271; Jones v. Burgess, 176 Md. 270, 4 A.2d 473. Moreover, laches may bar equitable relief even before the local Statute of Limitations has run. Russell v. Todd, 309 U.S. 280, 60 S.Ct. 527, 84 L.Ed. 754.

█ We do not wish to be understood as holding that the mere lapse of 19 years prior to the bringing of this action is sufficient, in itself, to deny relief on the ground of laches. Our point is that, after having carefully considered the background and history of this case in all of its peculiar aspects, we feel the interests of justice would best be served by our holding that the action is barred by unreasonable delay. The many difficulties of the appellee railroad inherent in the delayed defense of this action at this turbulent period in our national existence more than outweigh the alleged equity of restitution to appellants for the alleged nefarious acts committed by appellee two decades ago. This is in accord with the firmly imbedded principle that equity will not aid a plaintiff whose unexcused delay, if the action were allowed, would be unduly prejudicial to the defendant. Wagner v. Baird, 7 How. 234, 258, 12 L.Ed. 681; Stearns v. Page, 7 How. 819, 828, 829, 12 L.Ed. 928; Philippi v. Philippi, 115 U.S. 151, 157, 5 S.Ct. 1181, 29 L.Ed. 336; United States v. Beebe, 127 U.S. 338, 8 S.Ct. 1083, 32 L.Ed. 121; Curtner v. United States, 149 U.S. 662, 676, 13 S.Ct. 1041, 37 L.Ed. 890; Alsop v. Riker, 155 U.S. 448, 460, 15 S.Ct. 162, 39 L.Ed. 218; Russell v. Todd, 309 U.S. 280, 60 S.Ct. 527, 84 L.Ed. 754; McMullen v. Lewis, 4 Cir., 1929, 32

F.2d 481. See, also, decided by this Court, Fretwell v. Gillette Safety Razor Co., 106 F.2d 728, 730; Gross v. Tierney, 55 F.2d 578, 583; Wolf Mineral Process Corp. v. Minerals Separation North American Corp., 18 F.2d 483, 490, and Gill v. Colton, 12 F.2d 531, 535.

Appellants apparently recognize the existence of this strong public policy which is designed to prevent the airing of stale and vexatious claims in order to put an end to the possibility of litigation after the lapse of a reasonable time. Thus, the bill of complaint states that appellants have exhausted all their ordinary remedies by applying for relief from time to time to the Railroad Labor Board and its successor, the National Mediation Board, as well as to other federal departments and agencies, all of which have declined to take jurisdiction. Yet this does not appeal to us as a sound legal reason for the failure of appellants to resort to the forum of the federal courts (if this be the proper forum) almost two decades ago. Moreover, it affirmatively appears that some of the appellants unsuccessfully invoked the admitted jurisdiction of the Maryland State Courts many years ago in Wenner v. Western Maryland Railway Company, reported in the Baltimore Daily Record, May 15, 1926. This brings us to the third point presented in this appeal.

### Existence of a Valid Claim or Cause of Action.

In 1926, more than 100 individual employees brought separate actions against the Western Maryland Railway for damages sustained by reason of their alleged unlawful discharge by the Railway in 1922. The factual pattern was practically identical with that of the present case. The Wenner decision, supra, was one of these actions and it was tried as a test case in the Circuit Court for Baltimore County, Maryland. The court directed a verdict for the defendant Railway on the theory that there was no legally enforceable contract in existence. The agreement was deemed unilateral and without a valid consideration since the plaintiff employee had not obligated himself to remain in the Railway's service for any definite period of time. No appeal from this decision was taken by the plaintiff to the Court of Appeals of Maryland.

Appellee contends that while the Wenner case is not res judicata in the case before us, it is nevertheless a very potent au-

716

thority in support of its position that there was no valid binding contract between the parties. Cf. Davis v. Davis, 197 Ind. 386, 151 N.E. 134; Wilson v. Airline Coal Co., 215 Iowa 855, 246 N.W. 753; Swart v. Huston, 154 Kan. 182, 117 P.2d 576.

We feel, however, that the decision below dismissing appellants' complaint should be affirmed on the grounds (already discussed) of lack of jurisdiction and the doctrine of laches. It is, therefore, unnecessary for us to decide at this time whether there was a valid contract here, and whether (and to what extent) we are bound by the decision in the Wenner case. See Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; West v. American Tel. & Tel. Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139, 132 A.L.R. 956; Fidelity Union Trust Co. v. Field, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109; Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477.

For the reasons stated, the judgment below is affirmed.

Affirmed.