**INTERNATIONAL REFUGEE ORGANIZA-
TION v. REPUBLIC STEAMSHIP
CORPORATION et al.
Civ. No. 4479.**

United States District Court,
D. Maryland.

July 8, 1950.

Shea, Greenman, Gardner & McConnaughey, of Washington, D. C., and L. Vernon Miller and Franklin G. Allen, of Baltimore, Md., for plaintiff.

Ober, Williams, Grimes & Stinson, of Baltimore, Md., for defendants.

COLEMAN, Chief Judge.

This is a suit brought by International Refugee Organization (hereinafter called IRO), an unincorporated specialized agency of the United Nations concerned with the welfare of persons displaced by reason of the war, with its principal office in Geneva, Switzerland, against the Republic Steamship Corporation (hereinafter called Republic), a corporation of the Republic of Panama with its principal office there, and Jose Jacintho de Medeiros, a resident of Lisbon, Portugal and former President of Republic. Originally there were several other named defendants but service was never had upon them in Maryland, and a settlement being made with them in a like suit brought by IRO in the District Court for the Northern District of California against the same defendants, the present complaint has been dismissed as to these additional defendants.

Summarized, the causes of action, as set forth in the complaint are: (1) that Republic together with other defendants named in the complaint, through false representations made in connection with the charter of the steamship "San Francisco" by IRO from Republic in 1948, obtained from IRO funds in the amount of $840,000 and used these funds for purposes other than those for which they were advanced; (2) that the various named individual defendants were joint venturers, using the corporate form of Republic to deceive IRO, and failed to perform their obligations under the charter of the Steamship "San Francisco", as a result of which Republic and the other defendants became liable to IRO in the amount of $1,180,000;

and (3) that Republic and its associates, the other named defendants, became constructive trustees, for IRO's benefit, of the return of certain premiums on policies of insurance covering the San Francisco and of supplies which were purchased for the vessel in Lisbon.

Republic has moved to dismiss the complaint first, for want of jurisdiction, claiming that IRO cannot bring itself within Sec. 1332 of 28 U.S.C.A. which provides: "(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $3,000 exclusive of interest and costs, and is between: (1) Citizens of different States: (2) Citizens of a State, and foreign states or citizens or subjects thereof; (3) Citizens of different States and in which foreign states or citizens or subjects thereof are additional parties."

Second, the motion to dismiss the complaint is based upon the claim that as respects Republic, the service of process was invalid because Republic had never qualified to do business within the District of Maryland; has never done business here, and has never appointed an agent here to accept service of process. As to Medeiros, it is contended that service upon him was, likewise, invalid because at the time of service he was in the Maryland District only temporarily in connection with other litigation. In addition, it is contended that the venue was defective as to both Republic and Medeiros. While we entertain some doubt with respect to the validity of the service and also as to the correctness of the venue, we consider it unnecessary to decide these questions because of the position which we take with respect to the broader and more important point which has been more extensively argued, namely, the question of jurisdiction of this court to entertain the suit in any event, assuming service and venue to be proper.

Since Republic is a Panamanian corporation with its principal place of business in Panama, and since, therefore, it is conceded that Republic cannot under any theory of jurisdiction be a citizen of

any state or territory of the United States or of the District of Columbia, but is an alien defendant, it becomes necessary to determine just what the IRO is. If it also is an alien then, unless the present suit as disclosed by the bill of complaint is one arising under the Constitution, laws or treaties of the United States within the meaning of Section 1331 of Title 28 U.S.C.A. which provides that "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $3,000, exclusive of interest and costs, and arises under the Constitution, laws or treaties of the United States," this court has no jurisdiction to entertain this suit because the District Courts have no jurisdiction of suits solely between aliens where no federal question is involved. See Kavourgias v. Nicholaou Co., Ltd., 9 Cir., 148 F.2d 96; Ex parte Edelstein, 2 Cir., 30 F.2d 636, certiorari denied, Edelstein v. Goodard, 279 U.S. 851, 49 S.Ct. 347, 73 L.Ed. 994; Doidge v. Cunard Steamship Co., 1 Cir., 19 F.2d 500.; Cunard Steamship Co. v. Smith, 2 Cir., 255 F. 846.

What, then, is the IRO? As already stated, it is an unincorporated specialized agency of the United Nations, organized for the purpose of providing for the welfare of persons displaced as a result of the war. Article 104 of the Charter of the United Nations provides that "The Organization shall enjoy in the territory of each of its members such legal capacity as may be necessary for the exercise of its functions and the fulfilment of its purposes". 59 Stat. 1053. An identical provision is contained in Article 13 of the Constitution of the International Refugee Organization. See United Nations Conference on International Organizations, Documents Volume 13 pp. 104, 688. In his report on the San Francisco League of Nations Conference the Secretary of State said: "It is apparent that organizations like the United Nations which have offices and employees, will purchase supplies, and presumably rent or purchase office space, must have the legal capacity to enter into contracts, to take title to real and personal property and to appear in court (although its position as a defendant is protected by Article 105). The purpose of Article 104 is to make clear that the organization has legal capacity." See Senate Committee on Foreign Affairs, hearing on United Nations charter, 77th Congress, First Session, pp. 33, 134-135. The report of the Secretary of State made note of the fact that numerous agreements relating to other United Nations organizations contain a similar provision.

Next, Congress passed the International Organization Immunities Act of December 29, 1945, 22 U.S.C.A. § 288 et seq., implemented as respects IRO by Executive Order 9887, of August 22, 1947, 22 U.S.C.A. § 288 note, 12 F.R. 5723. This Act authorizes the President to designate the organizations, of which the United States is a member to which the privileges and immunities of the Act will extend. The organizations affected include the United Nations, Pan American Union, International Bank for Reconstruction and Development, in addition to IRO, as well as a dozen or more other international organizations of different kinds and of varying importance.

Section 2 (a, b) of the Act, 22 U.S.C.A. § 288a (a, b), provides as follows: "International organizations shall enjoy the status, immunities, exemptions, and privileges set forth in this section, as follows:

"(a) International organizations shall, to the extent consistent with the instrument creating them, possess the capacity—

. "(i) to contract:

"(ii) to acquire and dispose of real and personal property;

"(iii) to institute legal proceedings.

"(b) International organizations, their property and their assets, wherever located, and by whomsoever held, shall enjoy the same immunity from suit and every form of judicial process as is enjoyed by foreign governments, except to the extent that such organizations may expressly waive their immunity for the purpose of any proceedings or by the terms of any contract. * * *"

Then Congress, by the Act of July 1, 1947, 22 U.S.C.A. § 289, authorized the

United States to accept membership in the IRO. Section 1 of this Act, 22 U.S.C.A. § 289, which is the only section directly pertinent to the question before us, is as follows: "The President is authorized to accept membership for the United States in the International Refugee Organization (hereinafter referred to as the 'Organization'), the constitution of which was approved in New York on December 15, 1946, by the General Assembly of the United Nations, and deposited in the archives of the United Nations: Provided, however, That this authority is granted and the approval of the Congress of the acceptance of membership of the United States in the International Refugee Organization is given upon condition and with the reservation that no agreement shall be concluded on behalf of the United States and no action shall be taken by any officer, agency, or any other person and acceptance of the constitution of the Organization by or on behalf of the Government of the United States shall not constitute or authorize action (1) whereby any person shall be admitted to or settled or resettled in the United States or any of its Territories or possessions without prior approval thereof by the Congress, and this joint resolution shall not be construed as such prior approval, or (2) which will have the effect of abrogating, suspending, modifying, adding to, or superseding any of the immigration laws or any other laws of the United States."

■ It follows from the foregoing chronology of the creation and promotion of the functions of the IRO, including its endorsement by act of Congress and the acceptance of membership in it by the United States, that the IRO is not (1) a foreign corporation; (2) a corporation of the United States or of any state; nor (3) as an unincorporated organization is it a citizen, resident or subject of any foreign state or of the United States, or of any state or territory of the United States. It is simply a federation, a league within another league (i. e., of United Nations) whose members are various nations, including the United States who have banded together to promote the welfare of persons who have become refugees or displaced as a result of the last war.

Also it is clear that IRO is not, as its counsel claims, an agency of the United States. Article 3, section 2, of the Constitution provides that "The judicial Power shall extend * * * to Controversies to which the United States shall be a Party; * * *." Section 1345 of 28 U.S.C.A. provides that "Except as otherwise provided by act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by act of Congress." Section 451 of Title 28 U.S.C.A. defines the term "agency" as used in Title 28 as including "any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense."

Decisions concerning the International Monetary Fund and the Bank For Reconstruction And Rehabilitation are not conclusive of the question before us, because Section 286g of 22 U.S.C.A. specifically provides that "For the purpose of any action which may be brought within the United States or its Territories or possessions by or against the Fund or the Bank in accordance with the Articles of Agreement of the Fund or the Articles of Agreement of the Bank, the Fund or the Bank, as the case may be, shall be deemed to be an inhabitant of the Federal judicial district in which its principal office in the United States is located, and any such action at law or in equity to which either the Fund or the Bank shall be a party shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of any such action. * * *"

Thus it is not sufficient that the IRO has been expressly authorized to sue pursuant to Section 2(a) (iii) of the International Organization Act, 22 U.S.C.A. § 288a (a) (iii), which provides that IRO shall possess

the capacity "to institute legal proceedings." On behalf of IRO it is urged that there exists between itself and the United States a principal-agent relationship and that the purpose and history of Section 1345 of the Judicial Code show that the District Courts have jurisdiction to entertain a suit by a governmental body discharging responsibilities of governmental nature for the United States. The unquestioned fact is stressed that the United States is discharging or attempting to discharge such responsibilities. Reference is made to committee reports of both the House and the Senate on this point, and to the large sums that have been appropriated by the Congress for the purpose of discharging these responsibilities. See House Report 464, pp. 2, 3–4; Senate Report No. 51, pp. 2, 3; 80th Congress First Session; 93d Congress Rec. 2487. See also 93d Congress Rec. 2433, 2485, 7668, 7741. Reliance is also placed upon the alleged analogy of the status of the Bank of the United States; the Federal Land Banks, the Port of New York Authority; and Indian Tribes or Nations. See McCulloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579; Osborn v. Bank of United States, 9 Wheat. 738, 6 L.Ed. 204; Federal Land Bank v. Priddy, 295 U.S. 229, 55 S.Ct. 705, 79 L.Ed. 1408; Federal Land Bank of St. Paul v. Bismark Lumber Company, 314 U.S. 95, 62 S.Ct. 2, 86 L.Ed. 65; Helvering v. Gerhardt, 304 U.S. 405, 58 S.Ct. 969, 82 L.Ed. 1427; Cherokee Nation v. Georgia, 5 Pet. 1, 8 L.Ed. 25; Heckman v. United States, 224 U.S. 413, 32 S.Ct. 424, 56 L.Ed. 820; United States v. U. S. Fidelity and Guaranty Company, 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894. With such decisions as these as the basis, the statement is made on behalf of IRO that no instance is known where, for purposes of suit, a purely governmental organization has ever been denied the status of the government because other persons or other governments have shared in its organization or ownership, and that, therefore, in the case of the IRO, the simplest and most straightforward approach to this sensible end is to view it, when suing in the federal courts, as an instrumentality or agency of the United States.

This argument, however, is purely one of convenience and to adopt it would be tantamount to judicial legislation. Therefore, we are satisfied that this Court is without jurisdiction to entertain the present suit unless jurisdiction is to be found in another provision of the Judicial Code which we have above quoted but not heretofore analyzed and upon which counsel for IRO also places reliance, namely, Section 1331 which gives original jurisdiction to the District Courts of all civil actions wherein the stipulated jurisdictional amount is met "and arises under the Constitution, laws or treaties of the United States."

Relying upon this section it is claimed, first, that the present case is one arising under a treaty of the United States. This argument is based upon the chronological history of the manner in which the refugee problem was sought to be met by the United States and its allies. It was first referred to the Economic and Social Council of the United Nations by the latter's General Assembly. A special committee of that Council in June, 1946, reported a draft of the IRO constitution. The Council revised the draft and transferred it to the various governments for comment. A further revised draft was then presented to the General Assembly which by resolution 62(I) established the IRO in December, 1946. See Preparatory Commission for the International Refugee Organization, Document Prep. 1. Thereafter, in November, 1948, the IRO was brought into formal relationship with the United Nations by agreement approved by the United Nations General Assembly's Resolution 205 (III) and by the general counsel of IRO in September, 1948. This procedure was followed under the authority of the charter of the United Nations. See Articles 7, 22, 57, 63, 59 Stat. 1033.

From the aforegoing it is claimed that the IRO constitution was itself an international executive agreement having the status of a treaty. See United States v. Belmont, 301 U.S. 324, 57 S.Ct. 758, 81 L.Ed. 1134, United States v. Pink, 315 U.S. 203, 62 S.Ct. 552, 86 L.Ed. 796. However, the rule to be applied in determining wheth-

er a civil action is one falling within the provisions of Section 1331 is the same whether we are dealing with the Constitution itself or with treaties or laws made pursuant thereto. This has been clearly announced by the Supreme Court in numerous cases and is now firmly established. In Gully v. First National Bank, 299 U.S. 109, at pages 112-114, 57 S.Ct. 96, at page 97, 81 L.Ed. 70, the Court said: "How and when a case arises 'under the Constitution or laws of the United States' has been much considered in the books. Some tests are well established. To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. Starin v. New York, 115 U.S. 248, 257, 6 S.Ct. 28, 29 L.Ed. 388; First National Bank of Canton v. Williams, 252 U.S. 504, 512, 40 S.Ct. 372, 374, 64 L.Ed. 690. The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. Id.; King County v. Seattle School District, 263 U.S. 361, 363, 364, 44 S.Ct. 127, 128, 68 L.Ed. 339. A genuine and present controversy, not merely a possible or conjectural one, must exist with reference thereto (City of New Orleans v. Benjamin, 153 U.S. 411, 424, 14 S.Ct. 905, 38 L.Ed. 764; Defiance Water Co. v. Defiance, 191. U.S. 184, 191, 24 S.Ct. 63, 48 L.Ed. 140; Joy v. St. Louis, 201 U.S. 332, 26 S.Ct. 478, 50 L.Ed. 776; City and County of Denver v. New York Trust Co., 229 U.S. 123, 133, 33 S.Ct. 657, 57 L.Ed. 1101), and the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal. (State of Tennessee v. Union & Planters' Bank, 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511; Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126; The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716; Taylor v. Anderson, 234 U.S. 74, 34 S.Ct. 724, 58 L.Ed. 1218). Indeed, the complaint itself will not avail as a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense. Devine v. Los Angeles, 202 U.S. 313, 334, 26 S.Ct. 652, 50 L.Ed. 1046; The Fair v. Kohler Die & Specialty Co., supra.

"Looking backward we can see that the early cases were less exacting than the recent ones in respect of some of these conditions. If a federal right was pleaded, the question was not always asked whether it was likely to be disputed. This is seen particularly in suits by or against a corporation deriving its charter from an act of Congress. Osborn v. Bank of United States, 9 Wheat. 738, 817-828, 6 L.Ed. 204; Pacific Railroad Removal Cases, (Union Pacific R. Co. v. Myers), 115 U.S. 1, 11, 5 S.Ct. 1113, 29 L.Ed. 319. Modern statutes have greatly diminished the importance of those decisions by narrowing their scope. Gay v. Ruff, 292 U.S. 25, 35, 54 S.Ct. 608, 613, 78 L.Ed. 1099, 92 A.L.R. 970; People of Puerto Rico v. Russell & Co., 288 U.S. 476, 483, 53 S.Ct. 447, 449, 450, 77 L.Ed. 903. Federal incorporation is now abolished as a ground of federal jurisdiction except where the United States holds more than one-half the stock. Act of February 13, 1925, c. 229, § 12, 43 Stat. 936, 941 (28 U.S.C.A. § 42). Partly under the influence of statutes disclosing a new legislative policy, partly under the influence of more liberal decisions, the probable course of the trial, the real substance of the controversy, has taken on a new significance. 'A suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction, or effect of such a law, upon the determination of which the result depends.' Shulthis v. McDougal, 225 U.S. 561, 569, 32 S.Ct. 704, 706, 56 L.Ed. 1205. Cf. First National Bank of Canton v. Williams, supra; Hopkins v. Walker, 244 U.S. 486, 489, 37 S.Ct. 711, 61 L.Ed. 1270; Shoshone Mining Co. v. Rutter, 177 U.S. 505, 507, 20 S.Ct. 726, 44 L.Ed. 864. Only recently we said after full consideration that the doctrine of the charter cases was

to be treated as exceptional, though within their special field there was no thought to disturb them. People of Puerto Rico v. Russell & Co., supra. 'We should fly in the face of this legislative policy and disregard precedents which we think controlling were we to extend the doctrine now.' Id. *Today, even more clearly than in the past, 'the federal nature of the right to be established is decisive—not the source of the authority to establish it.'* Id." (Emphasis supplied).

Later in General Committee v. Missouri-Kansas-Texas R. Co., 320 U.S. 323, 64 S.Ct. 146, 153, 88 L.Ed. 76, the Supreme Court adhered to this same interpretation. That litigation involved a dispute between two labor organizations, one representing the craft of engineers and the other the craft of firemen employed by certain interstate carriers. Efforts to settle the dispute having failed, the matter was submitted to the National Mediation Board and a mediation agreement resulted between the firemen and the railroads. The engineers then brought an action in the federal court for a declaratory judgment that the agreement was in violation of the Railway Labor Act, 45 U.S.C.A. § 151 et seq., and that the engineers should be declared to be the sole representatives of the craft of engineers with the exclusive right to bargain for them. The carriers asked the court to define the respective rights of the parties. The firemen, though challenging the jurisdiction of the court, asked in the alternative that the agreement be declared void. In reversing the action of the District Court, the Supreme Court held that the case involved no right which under the Railway Labor Act was enforcible by the courts; and that, therefore, the suit was not one "arising under any law regulating commerce" and not within the original jurisdiction of the District Court under Section 24(8), now Sec. 1337 of 28 U.S.C.A. The Court said, 320 U.S. at page 337, 64 S.Ct. at page 152: "In view of the pattern of this legislation and its history the command of the Act should be explicit and the purpose to afford a judicial remedy plain before an obligation enforcible in the courts should be implied. Unless that test is met the assumption must be that Congress fashioned a remedy available only in other tribunals. * * * We are here concerned solely with legal rights under this federal Act which are enforcible by courts. For unless such a right is found it is apparent that this is not a suit or proceeding 'arising under any law regulating commerce' over which the District Court had original jurisdiction by reason of § 24(8) of the Judicial Code, 28 U.S.C. § 41(8), 28 U.S.C.A. § 41(8). Cf. People of Puerto Rico v. Russell & Co., 288 U.S. 476, 483, 53 S.Ct. 447, 449, 77 L.Ed. 903; Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70; Peyton v. Railway Express Agency, 316 U.S. 350, 352, 62 S.Ct. 1171, 1172, 86 L.Ed. 1525."

▮▮ Again, scarcely more than a year ago, the Supreme Court reaffirmed the test as laid down in the cases from which we have just quoted in National Mutual Insurance Co. v. Tidewater Transfer Co., 337 U.S. 582, 69 S.Ct. 1173, 93 L.Ed. 1556, quoting from the opinion in the Gully case, part of which we have above quoted. Applying this test to the suit before us, it needs no discussion to make it clear that no federal right is involved. This suit is merely one to recover damages for fraudulent breach of a contractual relationship between two aliens. Thus, even though we assume that the wording of the provision in Section 2(a) of the International Organization Act, which gives to the IRO the capacity to institute legal proceedings, was clearly intended to include the right to sue in the federal courts; and also, even if we assume that it is reasonably capable of such interpretation, still the requisite test has not been met in the present case because "the federal right to be established is decisive—not the source of the authority to establish it." This does not mean that the IRO can never sue in the federal courts. On the contrary, whenever a federal question is involved, as determined by the test just analysed, it can do so, regardless of defendant status. Likewise, the federal courts are not closed to it in suits which involve non-alien defendants,

and in which the other jurisdictional pre-requisites exist.

For these reasons, the motions to dismiss the complaint as respects both defendants must be granted.